**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DAT QUOC DO**, <br><br> Defendant. | Case No. 3:17-cr-431-SI <br><br> **OPINION AND ORDER ON MOTION TO DISMISS** |

Billy J. Williams, United States Attorney, and Benjamin Tolkoff and Paul Maloney, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Gerald M. Needham and Elizabeth G. Daily, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Defendant Dat Quoc Do ("Do") has moved to dismiss the indictment, which charges him with Unlawfully Using a Weapon as defined by Or. Rev. Stat. ("ORS") 166.220(1)(a) and as assimilated by 18 U.S.C. § 13 (Counts 1 and 2) and with Carrying and Using a Firearm during and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 3 and 4). Counts 1 and 2 are the predicate crimes of violence on which Counts 3 and 4 respectively rest. Do argues that this federal court lacks jurisdiction over Counts 1 and 2 of the indictment because

PAGE 1 – OPINION AND ORDER

the Indian Country Crimes Act ("ICCA") does not permit federal prosecution of a state crime committed in Indian Country by the Assimilative Crimes Act ("ACA"). Do argues in the alternative that even if the ICCA does permit federal prosecution of a state crime committed in Indian Country by the ACA, this specific state crime is precluded from assimilation based on the federal assault statute in 18 U.S.C. § 113. Do also argues that the state crime of Unlawful Use of a Weapon under ORS § 166.220 is not a "crime of violence" that may be used as a predicate offense for § 924(c)(1)(A) because the Oregon definition of "attempt" is broader than the federal generic definition of attempt; thus, Do argues, the Court should dismiss Counts 3 and 4. For the reasons that follow, the Court rejects Do's arguments regarding Counts 1 and 2, but accepts his arguments regarding Counts 3 and 4. Accordingly, Counts 3 and 4 are dismissed.

**A. Jurisdiction over Unlawful Use of a Weapon as assimilated by the ACA**

Do acknowledges that the ICCA gives the United States the ability to prosecute the "general laws of the United States" in Indian Country. 18 U.S.C. § 1152 (1948). Do argues, however, that the ACA, which the Government is using in this case to assimilate Oregon state law into federal law, is not such a "general law" of the United States.

Do's argument on this point is foreclosed by Ninth Circuit precedent. In *United States v. Marcyes*, 557 F.2d 1361 (9th Cir. 1977), the Ninth Circuit addressed the same argument, albeit raised by an amicus curiae, rather than by the defendant in that case. The Ninth Circuit explained:

> Amicus, ignoring appellants' concession that the A.C.A. is a general law of the United States made applicable to Indian reservations by 18 U.S.C. § 1152, argues that the A.C.A. is not applicable to crimes committed in Indian country and therefore the court below was without jurisdiction to hear the case. The district court rejected this argument made below and held that the A.C.A. was applicable by its own terms to Indian reservations, as well as incorporated by 18 U.S.C. § 1152.

PAGE 2 – OPINION AND ORDER

> Amicus argues that *Williams v. United States*, 327 U.S. 711 (1946) did not decide the question of whether the A.C.A. is applicable to Indian country. We disagree. In *Williams* the petitioner, a married white man, was convicted of having had sexual intercourse, within an Indian reservation, with an unmarried Indian girl who was over the age of 16 but under 18 years of age. This act was made punishable under the laws of the State of Arizona and was incorporated as a federal crime under the provisions of 18 U.S.C. § 468 (the predecessor to 18 U.S.C. § 13). The Supreme Court's initial statement was "(t)his case turns upon the applicability of the Assimilative Crimes Act, . . . ." Since it was undisputed that the act took place within an Indian reservation, the threshold question necessarily decided was whether the A.C.A. even applied to Indian country. Amicus' argument that the court merely assumed its applicability without deciding the question is belied by the court's own words. The court stated:
>
> "It is not disputed that this Indian reservation is 'reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof,' or that it is 'Indian country' within the meaning of Rev.Stat. § 2145. (the predecessor to 18 U.S.C. § 1152). This means that many sections of the Federal Criminal Code *apply to the reservation, including not only the Assimilative Crimes Act, . . ..*" 327 U.S. at 713 (emphasis added)
>
> We would also note that the *Williams* court's ultimate decision, that the A.C.A. did not apply to the particular crime charged because the precise acts were made penal by Federal law and therefore the State's laws could not be incorporated, would never have been reached had the court felt that the A.C.A. did not apply to any crime committed upon Indian lands.
>
> Our own review of the language of 18 U.S.C. § 13 and 18 U.S.C. § 1152 convinces us that the district court was correct in holding that the A.C.A., by its own terms and through § 1152, is applicable to Indian country.

*Id.* at 1365 n.1. Because *Marcyes* is binding on this Court, we reject Do's first argument that the ACA is not a "general law" of the United States applicable in Indian Country.

The second argument made by Do relating to Counts 1 and 2 is that the state crime of Unlawful Use of a Weapon is precluded from assimilation under the ACA by the federal assault statute. The Supreme Court in *Lewis v. United States*, 523 U.S. 155, 164 (1998), set forth a two-

part test for determining when the ACA may be used to make a state law applicable to federal enclaves. Under the first prong of the *Lewis* test, the court inquires only whether the "defendant's 'act or omission . . . [is] made punishable by *any* enactment of Congress.'" *Id.* (quoting 18 U.S.C. § 13(a) (emphasis in original)). If the answer is no, then the state law may be assimilated by the ACA. If the answer is yes, however, the court must then ask the question of whether the federal statute that applies to that "act or omission" precludes application of the state law in question. *Id.* In answering that second question, the Supreme Court gave three examples of when a federal enactment precludes application of a state law: (1) application of the state law "would interfere with the achievement of a federal policy"; (2) application of the state law "would effectively rewrite an offense definition that Congress carefully considered"; or (3) the "federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id*.

Do argues that the Oregon crime of Unlawful Use of a Weapon, ORS 166.220(1)(a), is precluded from assimilation under the ACA by the federal assault statute because Do's conduct can be punished as a simple assault under the federal statute and because Congress intended to occupy the entire field of assault under the comprehensive federal assault statute. In other words, Do argues that both prongs of the *Lewis* test have been satisfied, precluding this state charge from assimilation under the ACA.

The Court agrees that there is a federal law that could be used to punish Do's alleged conduct, thus satisfying the first prong of the *Lewis* test. The federal assault statute defines eight types of federal assault, including simple assault. *See* 18 U.S.C. § 113(a)(5). Simple assault under federal law includes "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily

harm." *U.S. v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007). As alleged in the indictment, Do's conduct of discharging a firearm at and near a vehicle driven by another individual, if proven, could be punishable as a simple assault. Thus, the Court must consider the second prong of *Lewis* to determine whether the Oregon statute in this case may be assimilated by the ACA. Under that prong, the Court askes whether the federal enactment precludes the application of the state statute.

Do argues that *U.S. v. Rocha* is controlling because it deals with the same federal assault statute that Do argues precludes the application of the state statute here. 598 F.3d 1144, 1150 (9th Cir. 2010). In *Rocha*, the Ninth Circuit held that the state statute at issue could not be assimilated under the ACA for "three connected reasons."

> First, the federal assault statute's comprehensive definitions reveal Congress's intent to fully occupy the field of assault on a federal enclave. Second, both the California and federal assault statutes punish approximately the same wrongful behavior, counseling against application of the state statute through the ACA. Third, applying California's statute would effectively rewrite the punishments Congress carefully considered for assault on federal enclaves.

*Id.* In *Rocha*, however, the Ninth Circuit considered California's assault with a deadly weapon statute. It was in that context that the panel held that the federal assault statute "fully occupied the law of assault within federal enclaves" and thus the California assault with a deadly weapon statute could not be assimilated. *Id.* at 1152.

In contrast, the state law at issue in this case is not Oregon's assault statute—it is an Oregon statute specifically pertaining to the unlawful use of a weapon. The Oregon statute at issue states in relevant part:

> (1) A person commits the crime of unlawful use of a weapon if the person:

PAGE 5 – OPINION AND ORDER

> (a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015; or
>
> (b) Intentionally discharges a firearm, blowgun, bow and arrow, crossbow or explosive device within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge. …
>
> (3) Unlawful use of a weapon is a Class C felony.

ORS 166.220. The application of this specific state law to a federal enclave would not "interfere with the achievement of a federal policy." *Lewis*, 523 U.S. at 164. Although *Rocha* made clear that the federal assault statute occupied the field of assaults, the Oregon law does not punish "approximately the same wrongful behavior." Instead, Oregon has determined that there is a need to regulate the manner in which dangerous and deadly weapons are used. The application of this statute to federal enclaves would not interfere with the achievement of a federal policy, nor would it effectively rewrite a federal offense that Congress carefully considered in the federal assault statute. Accordingly, *Rocha* is inapplicable in the pending prosecution of Do, and the Court holds that ORS 166.220 may be assimilated by the ACA. Do's motion to dismiss Counts 1 and 2 is denied.

**B. Unlawful Use of a Weapon is not a Crime of Violence as defined in 18 U.S.C. § 924(c)**

Do's next argument concerns Counts 3 and 4, which charge Do with violations of 18 U.S.C. § 924(c). Section 924(c)(1)(A) provides for enhanced punishment for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm[]." A "crime of violence" is defined in that statute as

> an offense that is a felony and--
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force
> against the person or property of another may be used in the course
> of committing the offense.

18 U.S.C. § 924(c)(3). The first clause is commonly referred to as the "force clause," and the second is commonly referred to as the "residual clause." Do argues that the residual clause is unconstitutionally vague because the Supreme Court held in *Sessions v. Dimaya* that a residual clause for the crime of violence definition contained in 18 U.S.C. § 16(b), a clause that is identical in all material respects to the residual clause at issue in this case, was unconstitutionally vague. 138 S. Ct. 1204, 1223 (2018). Do argues that an offense, therefore, must satisfy the force clause to qualify as a crime of violence under § 924(c).

The Government first responds that any "vagueness issues in this case" created by the residual clause of § 924(c)(3)(B) could be resolved by a "conduct specific" approach. According to the Government, under that approach, a properly instructed jury would decide whether, given the facts of this particular case, Do's "conduct" met the legal definition of a crime of violence. This Court finds the Government's argument unpersuasive based on the text of § 924(c)(3)(B) and the analysis provided by a plurality of the Supreme Court. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1127 n.5 (9th Cir. 2011) (following Supreme Court plurality opinion as "persuasive authority" though not binding precedent). Thus, the residual clause of 924(c)(3)(B) requires a court to analyze the predicate statute of offense, and not merely the conduct of the defendant.

The plurality opinion in *Dimaya* shows why this is so. The residual clause at issue there ("§ 16b") defined a "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 138 S. Ct. at 1211. The text of § 16b is identical to the text of § 924(c)(3)(B) in all material respects. The plurality of the Supreme Court

PAGE 7 – OPINION AND ORDER

gave a thorough textual analysis explaining why the residual clause required a court to analyze a statute of conviction, rather than simply the conduct of a particular defendant:

> Our decisions have consistently understood language in the residual clauses of both ACCA and § 16 to refer to "the statute of conviction, not to the facts of each defendant's conduct." *Taylor v. United States*, 495 U.S. 575, 601 (1990); *see Leocal*, 543 U.S., at 7 (Section 16 "directs our focus to the 'offense' of conviction ... rather than to the particular facts"). Simple references to a "conviction," "felony," or "offense," we have stated, are "read naturally" to denote the "crime as generally committed." *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009); *see Leocal*, 543 U.S., at 7; *Johnson*, 135 S. Ct., at 2561–2562. And the words "by its nature" in § 16(b) make that meaning all the clearer. The statute, recall, directs courts to consider whether an offense, by its nature, poses the requisite risk of force. An offense's "nature" means its "normal and characteristic quality." Webster's Third New International Dictionary 1507 (2002). So § 16(b) tells courts to figure out what an offense normally—or, as we have repeatedly said, "ordinarily"—entails, not what happened to occur on one occasion. And the same conclusion follows if we pay attention to language that is missing from § 16(b). As we have observed in the ACCA context, the absence of terms alluding to a crime's circumstances, or its commission, makes a fact-based interpretation an uncomfortable fit. *See Descamps*, 570 U.S., at 267. If Congress had wanted judges to look into a felon's actual conduct, "it presumably would have said so; other statutes, in other contexts, speak in just that way." *Id.*, at 267–268. The upshot of all this textual evidence is that § 16's residual clause—like ACCA's, except still more plainly—has no "plausible" fact-based reading. *Johnson*, 135 S. Ct., at 2562.

*Id.* at 1217-18. All of the same textual analysis applies with equal force in this case. And while this analysis comes from the plurality opinion of the Supreme Court in *Dimaya*, the majority of that Court also held that under § 16(b), a court must "identify the conduct typically involved in a crime." *Id.* at 1221.

Nor is this Court persuaded by the Government's argument that the situation is different before trial, when the crimes alleged are still pending. Settled Ninth Circuit precedent binds this Court on exactly this point. *See United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006)

PAGE 8 – OPINION AND ORDER

("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime.") *See also United States v. Amparo*, 68 F.3d 1222, 1224-26 (9th Cir. 1995).

The Government offers no other argument for why the residual clause of § 924(c)(3)(B) is not unconstitutionally vague. Indeed, several other district courts in the Ninth Circuit already have held that it is. *See, e.g., United States v. Bundy*, 2016 WL 3361490, at *5 (D. Or. June 10, 2016) (finding the reasoning of *Dimaya* applies to the residual clause of § 924(c)(3)(B) and, accordingly, finding § 924(c)(3)(B) void for vagueness); *United States v. Baires–Reyes*, 191 F. Supp. 3d 1046, 1050-52 (N.D. Cal 2016); *United States v. Lattanaphom*, 2016 WL 393545, at *3–6 (E.D. Cal. Feb. 2, 2016); *United States v. Bell*, 158 F. Supp. 3d 906, 923-24 (N.D. Cal. 2016). This Court now joins these other courts in holding that because §16(b) "appears identical to § 924(c)(3)(B) in all material respects," § 924(c)(3)(B) is void because it is unconstitutionally vague.

Thus, this Court must rely on the force clause of § 924(c)(3) to determine whether the state statute in this case may serve as a predicate offense. For the force clause, too, Ninth Circuit precedent dictates that we use the categorical approach. *Piccolo*, 441 F.3d at 1086. Under the categorical approach, courts determine "whether the state statute defining the crime of conviction categorically fits within the 'generic' federal definition of" the prescribed offense. *United States v. Garcia-Santana*, 774 F.3d 528, 533 (9th Cir. 2014). Accordingly, a court must look to the elements of the offense and "ask whether the elements of the [state predicate crime] criminalize 'a broader swath of conduct'" than that covered by the definition of crime of violence in the force clause of § 924(c). *U.S. v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014) (quoting *Descamps v. United States*, 570 U.S. 254, 258 (2013)). If the statute criminalizes

conduct that goes beyond the elements of the federal offense, the statute is "overbroad" and cannot serve as a predicate offense. *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867-68 (9th Cir. 2015). Because the categorical approach is concerned only with what conduct the offense necessarily involves, the court "must presume that the [offense] rest[s] upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (alterations and citations omitted).

The Government has charged Do under ORS § 166.220(1)(a) with intentionally attempting to use a dangerous and deadly weapon. Section 166.220(1)(a) prohibits "[a]ttempts to use [any dangerous or deadly weapon] unlawfully against another." This is known as the "attempt offense" under this statute. *United States v. Willis*, 795 F.3d 986, 995 (9th Cir. 2015) (holding that subsection (1)(a) is internally divisible into two separate offenses: the "attempt offense" and the "possession offense."). In *Willis*, the Ninth Circuit held that this attempt offense "has as an element the use, attempted use, or threatened use of physical force against the person of another," based on how Oregon law defines "use." *Id.* at 995-96.

What *Willis* did not consider, however, was whether "attempt" itself is broader under Oregon law than under federal law. The state offense at issue prohibits attempts to use weapons, and the force clause of 924(c)(3) includes in its definition of a crime of violence an offense that has as an element the "attempted use" of physical force. Thus, if Oregon's definition of "attempt" criminalizes conduct that goes beyond the elements of the federal offense, the Oregon statute is overbroad.

*Sandoval v. Sessions* sheds light on this question. 866 F.3d 986 (9th Cir. 2017). In *Sandoval*, the Ninth Circuit noted that under Oregon law, an attempt occurs when a person

"intentionally engages in conduct which constitutes a substantial step toward commission of a crime." *Id*. at 990 (citing ORS 161.405(1)). In *Sandoval*, the Ninth Circuit further found that solicitation alone (such as an offer to deliver a controlled substance) is a substantial step under Oregon law in the context of attempted delivery of controlled substances. *Id.* Under federal law, however, a defendant may not be convicted of an attempt offense based only on soliciting delivery. *Id.* at 992-93. Thus, the Ninth Circuit concluded that the Oregon conviction was not a categorical match to a drug trafficking crime under the federal statute.

Although the court's holding in *Sandoval* was specific to attempted delivery under the Controlled Substances Act, the court's reasoning involved the generic federal definition of "attempt," and the court noted that its analysis under state law was consistent with non-drug attempt cases. *Id.* at 992. The court explained:

> The appellate court's reasoning in *Johnson* [(a non-drug attempt case)] was that solicitation is both strong evidence of criminal purpose *and* a substantial step toward accomplishing that purpose. . . . Nothing in *Johnson* requires a defendant to take some affirmative act to further the goal of the requested criminal behavior or specify how the crime would take place.

*Id.* After *Sandoval*, courts in this district have held that other crimes incorporating Oregon's definition of attempt similarly are not categorical matches for the federal definition of attempt. *See, e.g., United States v. Durr*, No. 3:09-cr-00080-JO (D. Or. Sept. 11, 2017) (slip op. at 5) (finding the Oregon attempt statute overbroad and concluding that Oregon Attempted Robbery I does not qualify as a "crime of violence" under the United States Sentencing Guidelines); *United States v. Harms*, 2017 WL 4918513, *4 (D. Or. Oct. 31, 2017) (holding that Oregon Attempted Assault II does not qualify as a "crime of violence" under the United States Sentencing Guidelines "because Oregon's attempt law is broader than the federal generic definition of attempt.").

PAGE 11 – OPINION AND ORDER

In the pending case, the Government argues that Oregon's attempt statute is coextensive with the generic attempt offense.[1] Almost all of the cases that the Government cites, however, predate *Sandoval*, and thus are of little precedential value on this point. Moreover, in the one case that the Government cites that postdates *Sandoval*, *Diego v. Sessions*, 857 F.3d 1005, 1015 n.4 (9th Cir. 2017), the Ninth Circuit expressly noted that the defendant's argument that Oregon's attempt statute does not match the generic federal definition of attempt was raised for the first time on appeal and thus was waived and not considered by the Ninth Circuit. Accordingly, the Court holds that because "attempt" under Oregon law is broader than federal generic attempt, Do's charges for the unlawful use of a weapon under the "attempts to use" prong may not serve as a qualifying crime of violence under 18 U.S.C. § 924(c).

## CONCLUSION

In response to Defendant's Motion to Dismiss (ECF 52), Defendant's motion is DENIED with regard to Counts 1 and 2 but GRANTED with regard to Counts 3 and 4. Accordingly, Counts 3 and 4, which allege using or carrying a firearm during and in relation to a crime of violence, are DISMISSED.

**IT IS SO ORDERED**.

DATED this 28th day of November, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

---

[1] The Government does not rebut Do's argument that although "attempt" in ORS § 166.220 appears in the substantive definition of the crime rather than by incorporation from the statute defining attempt, ORS § 161.405, Oregon courts have recognized that the same attempt standard applies in both contexts. *State v. Zolotoff*, 275 Or. App 384, 396-97 (2015).